FIRESTONE GREENBERGER PLLC
*Attorneys for Plaintiffs*
Jordan Greenberger, Esq.
14 Penn Plaza, 9th Floor
New York, NY 10122
(212) 597-2255
jg@firegreenlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAIR RUSSELL PRODUCTIONS LLC and BRP RECORDS, LLC, | Case No. 23-cv-9816 |
| Plaintiffs, | **COMPLAINT** |
| -against- | JURY TRIAL DEMANDED |
| JORGE RIVERA-HERRANS, | |
| Defendant. | |

Plaintiffs Blair Russell Productions LLC ("BRP") and BRP Records, LLC ("Records") (together, "Plaintiffs"), for their complaint against defendant Jorge Rivera-Herrans ("Defendant" or "Rivera-Herrans"), plead the following:

**PRELIMINARY STATEMENT**

1.      BRP is a music producer that created sound recordings of performances of 40 songs that were written by Defendant as part of a musical theatrical work entitled *Epic*.  Nine of the song were fully recorded and publicly released by Records as the label.  Plaintiffs seek a declaration that they: (a) are the sole authors and owners of the copyright in the existing sound recordings, for both the fully and partially recorded songs; and (b) may finalize the recording, mixing, and mastering of the songs that have not yet been completed, and then exploit those completed works as the sole copyright owners of those recordings.

2.      There are nine batches of songs.  BRP produced and completed, and Records commercially released, recordings of the first two batches of the songs in December 2022 and

January 2023.  In early 2023, those recordings became very popular on social media and the recordings have generated significant revenues from streaming and downloads.

3.      Plaintiffs desire to finalize recording the third through ninth batches of songs and seek a declaration that they may do so.  BRP has nearly completed producing recordings of the third and fourth batches of songs (they require only final mixing and mastering to be commercially releasable); and to varying degrees, BRP has produced recordings of the fifth through ninth batches of songs.  Indeed, Records anticipates releasing the third batch of songs on or about November 10, 2023.

4.      It is undisputed that: (a) Defendant is the author of the underlying subject compositions; (b) there are recordings of his vocal performance of certain parts of those compositions; and (c) Plaintiffs are entitled to recoup the costs they incurred in relation to producing and releasing the recordings.

5.      Additionally, when BRP created the recordings and again when Records released the first and second batches of songs, Defendant did not dispute Plaintiffs' ownership of the copyright in the recordings or Plaintiffs' right to finalize and exploit the unreleased songs.

6.      It was not until approximately February 2023, when the parties received interest from major record labels, that Defendant first challenged Plaintiffs' previously undisputed rights and interests in the recordings.

7.      However, by that time BRP had already produced the subject recordings and it had incurred significant costs (exceeding $75,000) to do so.  BRP arranged and paid for the entire recording process, including locating and recording the performances of musicians and other vocalists on a work-for-hire basis, mixing, and mastering certain of the recordings, and other related activities.  Further, Plaintiffs were intending and preparing to finalize and release

2

recordings of the third through ninth batches of songs (and Records is working to release the third batch of songs on or about November 10, 2023).

8.      Accordingly, Plaintiffs seek a declaratory judgment concerning the parties' respective rights and interests in the existing recordings of both released and unreleased songs, and Plaintiffs' right to finalize and exploit recordings of the unreleased songs.

## PARTIES

9.      BRP is a limited liability company organized under the laws of the State of Wyoming, with a principal place of business located in Cheyenne, Wyoming.

10.     Records is a limited liability company organized under the laws of the State of Wyoming, with a principal place of business located in Cheyenne, Wyoming.

11.     Defendant is an individual who resides, on information and belief, in Maryland.

## JURISDICTION & VENUE

12.     This is a declaratory judgment action involving a case of actual controversy under the Copyright Act of 1976.  The basis of jurisdiction is 28 U.S.C. §§§ 1331, 1338(a), and 2201. The court has supplemental jurisdiction over any related state law claim pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because: (i) a substantial part of the events giving rise to the claims arose in this district (e.g., the negotiation of a live theatrical option agreement [*infra*], recording of parts of the songs); and (ii) on information and belief, Defendant's agents (e.g., his attorneys) reside or otherwise are found in this district.

## FACTS

14.     Defendant is the bookwriter, composer, and lyricist of the dramatic musical play currently entitled *Epic*.  *Epic* is a musical adaptation of Homer's *The Odyssey* containing approximately 40 musical works authored by Defendant (each musical work a "Composition," and together the "Compositions").  *Epic* is divided into nine "sagas" (five sagas in Act 1 and four sagas in Act 2), and each saga contains several Compositions.  A list of the Compositions, identifying in which saga they appear, is annexed hereto as Exhibit 1.

15.     In 2022, BRP and Defendant (through their respective attorneys located or otherwise based in New York, New York) spent months negotiating a short-form option agreement (the "Live Theatrical Option Agreement") that would grant BRP certain rights to produce second-class live theatrical musical productions of *Epic* throughout the United States, Canada, and the United Kingdom, including without limitation an option to produce first-class productions on Broadway in New York or the West End in the United Kingdom, and other related rights.

16.     At the same time the Live Theatrical Option Agreement was being negotiated, the parties (through their respective attorneys located or otherwise based in New York, New York) were negotiating a separate agreement concerning the exploitation of master recordings of the Compositions (the "Cast Album/Master Recordings Agreement").  The Cast Album/Master Recordings Agreement was going to be annexed as "Exhibit B" to the Live Theatrical Live Theatrical Option Agreement for purposes of convenience.

17.     In the Cast Album/Master Recordings Agreement, the parties had negotiated that BRP and its successors and assigns, including Records, would be granted all necessary and exclusive rights throughout the universe to produce, record, manufacture, and otherwise create,

promote, and advertise master recordings of all of the Compositions in a concept album, cast album, and/or as singles (collectively, the "Albums").  The agreement (¶2) provided in pertinent part that BRP was being granted all necessary rights to "…(iii) release phonograph records or any other reproductions of the Masters in physical or digital or other electronic form, existing now or hereafter created, through all channels (including in all sound only carriers now known or hereafter existing) under the BRP Records, LLC or such other mutually approved trademarks, trade names or labels."

18.     The parties had further negotiated in the Cast Album/Master Recordings Agreement that upon termination or expiration of that agreement, BRP and its successors and assigns, including Records, were to have the right to continue commercially distributing and otherwise exploiting the Album(s) in perpetuity.

19.     Further, the parties had negotiated in the Cast Album/Master Recordings Agreement that from their inception, the master recordings together with the performances embodied therein and all copyrights therein, and any and all renewals and extensions thereof, were to be BRP's (and its successors and assigns') property throughout the universe and in perpetuity; and for the purposes of copyright law, that Defendant and all performers whose performances are recorded on the master recordings were to be deemed to be independent contractors providing their services on a work-for-hire basis, and that such master recordings would be deemed "works made for hire" in favor of BRP as the author of the recordings.  The parties had further negotiated, and the Cast Album/Master Recordings Agreement (¶ 5) stated, that "[BRP] shall have the sole and exclusive right to own and register the copyright in the Masters in [BRP's] name, as the sole owner and author thereof, and to secure any and all

renewals and extensions of such copyrights, <u>provided</u> that [BRP] may assign this right to Label in [BRP]'s discretion."  (Emphasis in original.)

20.     To be annexed as "Exhibit A" to the Live Theatrical Option Agreement was a proposed release schedule and distribution details for the recordings.  The parties anticipated releasing recordings of one saga per month between late December 2022 and late August 2023, and then releasing a compilation of all the recordings in late September 2023.

21.     On or about December 14, 2022, BRP's attorney Lee Feldshon, Esq. ("Feldshon") emailed Defendant's then-attorney Dan Wasser, Esq. ("Wasser") a revised draft of the short-form Live Theatrical Option Agreement and exhibits, including the Cast Album/Master Recordings Agreement.

22.     On or about December 20, 2022, Wasser emailed Feldshon with "limited comments" concerning the revised Live Theatrical Option Agreement, and one minor comment concerning the Cast Album/Master Recordings Agreement.  Regarding the Cast Album/Master Recordings Agreement, Wasser wrote: "No comments other than with regard to" payment of royalties to Defendant in the event of an uncured breach.

23.     On or about January 11, 2023, Feldshon responded to Defendant's "limited comments," and specifically with respect to Wasser's comment concerning the Cast Album/Master Recordings Agreement, Feldshon responded: "Ok".  Accordingly, at that time the parties had a meeting of the minds on all the material terms of the Cast Album/Master Recordings Agreement.

24.     The Cast Album/Master Recordings Agreement was never ultimately signed by the parties.  On information and belief, Defendant attempted to refute that agreement, and cut out Plaintiffs from enjoying the fruits of their labors, when major record labels expressed interest in

*Epic*.   Nonetheless, prior to record labels expressing interest, in reliance upon the parties'
meeting of the minds on all the material terms of the Cast Album/Master Recordings Agreement,
their good faith negotiations, and the anticipated signing and closing of the Live Theatrical
Option Agreement, BRP completed producing and mastering recordings of certain of the
Compositions, and recorded additional parts of certain of the Compositions.

25.     Recording for the first saga took place in or about June 9-12, 2022, in Mexico
City and Manhattan, and there were additional recording sessions for all the sagas in Los
Angeles on various dates through July and August 2022.  On or about December 19-21, 2022,
there were additional recording sessions for the second saga in Kansas City and Manhattan; and
on or about January 13-15 and February 4-5, 2023, there were additional recording sessions in
Manhattan and Los Angeles for the third saga.  During these periods, BRP, among other things:
(a) created budgets; (b) arranged and paid for travel, transportation, and housing
accommodations for Defendant, other performers (vocal and musical), and studio producers; (c)
arranged and paid for performances of the Compositions to be professional recorded at studios in
Manhattan, Mexico City, Los Angeles and Kansas City; (d) arranged and paid for vocal
coaching; (e) paid various fees to the performers and studio producers; and (f) arranged and paid
for the mixing and mastering of the recordings.

26.     BRP fixed performances of the Compositions in a tangible medium.

27.     As a result of these expenditures of effort, time, and money, BRP created
complete and commercially releasable master recordings of the Compositions appearing in
*Epic*'s first (Troy) and second (Cyclops) sagas (the "First Recordings").  The First Recordings
have been registered with the United States Copyright Office as registration numbers
SR0000972991 (first saga) and SR0000972969 (second saga).  These registrations supplement

earlier registrations filed by Records which inadvertently identified Defendant as the author of the First Recordings based on a misunderstanding of how to properly register a work-made-for-hire.

28.     As a result of these expenditures of effort, time, and money, BRP created substantially completed master recordings of the Compositions appearing in *Epic*'s third (Ocean) and fourth (Circe) sagas (the "Middle Recordings").  The Middle Recordings require only final mixing and mastering to be commercially releasable, and Plaintiffs are working to commercially release the Ocean saga recordings on or about November 10, 2023.

29.      As a result of these expenditures of effort, time, and money, BRP created in varying degrees partially completed master recordings of Compositions appearing in *Epic*'s fifth (Underworld), sixth (Thunder), seventh (Wisdom), eighth (Vengeance), and ninth (Ithaca) sagas (the "Final Recordings"; and together with the First Recordings and Middle Recordings, the "Master Recordings").

30.     In accordance with the schedule that was to be "Exhibit A" to the Live Theatrical Option Agreement, Records released the First Recordings as follows: Records released the Troy saga on or about December 25, 2022; and Records released the Cyclops saga on or about January 27, 2023.

31.     The First Recordings became very popular on social media (e.g., TikTok), and the recordings of the Troy saga debuted at #2 on the Billboard Cast Albums Chart (right below the blockbuster musical *Hamilton*).

32.     Since their initial releases in December 2022 and January 2023, the Albums of the First Recordings have been streamed approximately 90 million times on various platforms.

Additionally, there have been tens of thousands of downloads of individual Albums of the First Recordings.

33.     As a result of their popularity, in or about late January/early February 2023, the parties were approached by major record labels concerning further exploitation of master recordings of the Compositions, including without limitation Albums of the First Recordings.

34.     On or about February 9, 2023, Nick Gordon, Esq. ("Gordon") – who is Wasser's colleague and partner at the Manhattan law firm representing Defendant – introduced himself to Feldshon (Plaintiffs' attorney) and began reviewing, *inter alia*, the unsigned Cast Album/Master Recordings Agreement that had weeks prior been finalized between Feldshon and Wasser.

35.     On or about February 13, 2023, Gordon emailed Feldshon a heavily redlined edit of the Cast Album/Master Recordings Agreement, which changed radically the previously agreed-upon agreement.  In those proposed edits, Defendant (through Gordon) for the first time purported that Plaintiffs did not own the copyright in the Master Recordings.

36.     During the following months, the parties had various communications concerning the ownership and exploitation of the Master Recordings.

37.     As part of those discussions, and despite his prior acknowledgment of Plaintiffs' rights and interests in the Master Recordings, Defendant refused to acknowledge Plaintiffs' ownership of the copyright in any of the Master Recordings, asserted that he (not Plaintiffs) owned the copyright therein, and challenged Plaintiffs' right to finalize and release Albums of *Epic*'s third through ninth sagas, with or without the Middle and Final Recordings.

38.     For example, in relation to Plaintiffs' proposal that Defendant buy out the copyright in the Master Recordings, on August 7, 2023, Gordon emailed Feldshon the following: "Holding onto rights that [Plaintiffs] [sic] doesn't have and can't claim to own underscores how

backwards this is.  Likewise, offering to transfer to Jorge copyrights [Plaintiffs] [sic] does not own and had no right to register in the first place makes this a bit of a crazy exercise."

39.     Plaintiffs' ownership of the copyright in the Master Recordings, and Plaintiffs' right to finalize and exploit the Middle and Final Recordings, had not been challenged by Defendant until *after* BRP had already recorded and Records had released Albums of the First Recordings, until *after* BRP had produced the Middle and Final Recordings, and until *after* Defendant was approached by major record labels and had a new attorney (at the same firm as his previously attorney) representing him.

40.     Now, the parties have a justiciable controversy concerning: (a) ownership of the copyright in the Master Recordings; and (b) BRP's right to complete recording the Compositions that are part of *Epic*'s third through ninth sagas and then for Plaintiffs to exploit Albums of those recordings and the existing Middle and Final Recordings.

41.     Records has earned and collected revenues from its exploitation of Albums of the First Recordings.

42.     Plaintiffs desire to finalize recording the Compositions that appear in *Epic*'s third through ninth sagas, and release Albums of those recordings with the Middle Recordings and Final Recordings as part of the completed works.  For example, Plaintiffs are working to finalize and release Albums of the Middle Recordings on or about November 10, 2023.

43.     The parties do not dispute that Plaintiffs are entitled to reimbursement of their costs of producing and releasing the Master Recordings from revenues generated by exploitations thereof.

44.     However, the parties have a justiciable controversy concerning Plaintiffs'

obligation, if any, to pay monies to Defendant relating to Plaintiffs' exploitations of the Master

Recordings and/or other recordings of performances of the Compositions produced by Plaintiffs.

## COUNT I – DECLARATORY JUDGMENT

### *Plaintiffs Are the Authors and Owners of the Master Recordings*

45.     Plaintiffs repeat and re-allege paragraphs 1 through 44 herein.

46.     There is a justiciable controversy regarding whether Plaintiffs are the exclusive

owner of the copyright in the Master Recordings.

47.     A judicial determination of the parties' rights and duties is necessary and

appropriate under these circumstances to resolve the controversy between the parties.

48.     Plaintiffs seek a judgment declaring that they are the sole authors and owners, for

purposes of copyright law, of all the existing Master Recordings.

## COUNT II – DECLARATORY JUDGMENT/ PROMISSORY ESTOPPEL

### *Plaintiffs May Finalize and Exploit Recordings of the Unfinished Songs*

49.     Plaintiffs repeat and re-alleges paragraphs 1 through 48 herein.

50.     At BRP's time, effort, and expense, and in good faith and reasonable reliance

upon (a) the parties' communications, their completed negotiations regarding and their approval

of the Cast Album/Master Recordings Agreement, and (b) Defendant's prior promises that

Plaintiffs owned the copyright in sound recordings of the Compositions produced by BRP, BRP

partially recorded elements of the Compositions that are part of *Epic*'s third, fourth, fifth, sixth,

seventh, eighth, and ninth sagas.

51.     Plaintiffs understood and expected that those Compositions would be fully

recorded, and that Records would then release Albums thereof, individually and as part of the

larger concept album that includes the Albums of the First Recordings that were released in December 2022-January 2023.

52.     Plaintiffs sustained injury in reliance upon the agreed upon Cast Album/Master Recordings Agreement, and Defendant's promises, inasmuch as: (a) BRP paid various costs and fees towards producing the Middle and Final Recordings, and incurred costs relating to cancelling additional recording sessions intended for completing the recording of the Compositions that had been scheduled to take place in Manhattan in March 2023; and (b) the First Recordings are of diminished value as not being part of a larger concept album for the entirety of *Epic*.

53.     There is a justiciable controversy regarding whether BRP may finalize the recording, mixing, and mastering of the Compositions in *Epic*'s third through ninth sagas.

54.     A judicial determination of the parties' rights and duties is necessary and appropriate under these circumstances to resolve the controversy between the parties.

55.     Defendant should be estopped from asserting any type of copyright infringement claim against Plaintiffs relating to the exploitation of any of the Master Recordings, including the Middle and Final Recordings and Plaintiffs' anticipated exploitation of recordings of the Compositions appearing in *Epic*'s third through ninth sagas.

56.     Plaintiffs seek a judgment declaring that, either because the Cast Album/Master Recordings Agreement is enforceable or because of the doctrine of promissory estoppel, Plaintiffs: (a) may finalize the recording, mixing, and mastering of the Compositions that are part of *Epic*'s third, fourth, fifth, sixth, seventh, eighth, and ninth sagas and which are not the subject of the compulsory mechanical licensing scheme (17 U.S.C. § 115); and (b) are the sole authors of (for purposes of copyright law), and sole owners of the tangible and intangible rights in, such

completed master recordings, such that Plaintiffs may then fully exploit such recordings as Albums, with or without the Middle and Final Recordings.

## COUNT III – DECLARATORY JUDGMENT

*In the Alternative, the Parties Are Co-Authors and Owners of the Master Recordings*

57.    Plaintiffs repeat and re-allege paragraphs 1 through 56 herein.

58.    In the alternative, Plaintiffs seek a judgment declaring that: (a) Plaintiffs and Defendant are co-authors and owners, for purposes of copyright law, of the Master Recordings, each with an independent right to exploit the recordings and a duty to account to the other; and/or (b) if any part of the Master Recordings is considered wholly authored and/or owned by Defendant, then he granted Plaintiffs an irrevocable and broad license to exploit such part(s) of the recordings.

WHEREFORE, Plaintiffs demand a judgment:

A.    Declaring that Plaintiffs are the sole authors and owners of the copyright in all the Master Recordings, and

B.    Declaring that Plaintiffs (i) may finalize the recording, mixing, and mastering of the Compositions that are part of *Epic*'s third, fourth, fifth, sixth, seventh, eighth, and ninth sagas; and (ii) are the sole authors and owners of such completed master recordings, such that Plaintiffs may then exploit such recordings as Albums, with or without the Middle and Final Recordings;

C.    In the alternative, declaring that the parties are co-authors and owners, for purposes of copyright law, of the Master Recordings, each with an independent right to exploit the recordings and a duty to account to the other; or that Defendant granted Plaintiffs an

13

irrevocable broad license to exploit any part of the Master Recordings that may be considered wholly authored and/or owned by Defendant;

        D.      Pursuant to 17 U.S.C. § 502, enjoining Defendant from exploiting the Master Recordings;

        E.      Awarding Plaintiffs their attorney's fees, pursuant to 17 U.S.C. § 505;

        F.      Awarding Plaintiffs their costs and disbursements in this action; and

        G.      Granting Plaintiffs such other and further relief as the Court deems just and proper.

## <u>REQUEST FOR JURY TRIAL</u>

Plaintiffs request a jury trial on all the issues so triable.  This request is without prejudice to, or waiver of, Plaintiffs' right to move for judgment on all issues that may be decided by the Court.

Dated:  November 3, 2023

                          FIRESTONE GREENBERGER PLLC
                          *Attorneys for Plaintiffs*

                          /s/ Jordan Greenberger
                          Jordan Greenberger, Esq. (JG-0316)
                          14 Penn Plaza, 9th Floor
                          New York, NY 10122
                          (212) 597-2255
                          jg@firegreenlaw.com

**<u>EXHIBIT 1</u>**
**Compositions / Sagas**

| **SAGA** | **SONG #**<br>(Saga/Total) | **TITLE OF COMPOSITION**<br>(As of February 2023) |
|---|---|---|
| The Troy Saga | | |
| | 1/1 | *The Horse and the Infant* |
| | 2/2 | *Just a Man* |
| | 3/3 | *Full Speed Ahead* |
| | 4/4 | *Open Arms* |
| | 5/5 | *Warriors of the Mind* |
| The Cyclops Saga | | |
| | 1/6 | *Polyphemus* |
| | 2/7 | *Survive* |
| | 3/8 | *Remember Them* |
| | 4/9 | *My Goodbye* |
| The Ocean Saga | | |
| | 1/10 | *Storm* |
| | 2/11 | *Luck Runs Out* |
| | 3/12 | *Keep Your Friends Close* |
| | 4/13 | *Ruthlessness* |
| The Circe Saga | | |
| | 1/14 | *Puppeteer* |
| | 2/15 | *Wouldn't You Like* |
| | 3/16 | *Done For* |
| | 4/17 | *There Are Other Ways* |
| The Underworld Saga | | |
| | 1/18 | *The Underworld* |
| | 2/19 | *No Longer You* |
| | 3/20 | *Monster* |
| The Thunder Saga | | |
| | 1/21 | *Suffering* |
| | 2/22 | *Different Beast* |
| | 3/23 | *Scylla* |
| | 4/24 | *Mutiny* |
| | 5/25 | *Thunder Bringer* |
| The Wisdom Saga | | |
| | 1/26 | *Legendary* |
| | 2/27 | *Little Wolf* |
| | 3/28 | *We'd Be Fine* |
| | 4/29 | *Love in Paradise* |
| | 5/30 | *God Games* |
| The Vengeance Saga | | |
| | 1/31 | *Not Sorry for Loving You* |
| | 2/32 | *Dangerous* |
| | 3/33 | *Charybdis* |
| | 4/34 | *Get in the Water* |

|  | 5/35 | *Six Hundred Strike* |
|---|---|---|
| The Ithaca Saga |  |  |
|  | 1/36 | *The Challenge* |
|  | 2/37 | *Hold Them Down* |
|  | 3/38 | *King* |
|  | 4/39 | *Royal Wisdom Burst* |
|  | 5/40 | *Olive Tree* |